UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

VANESSA BEARD,                    )
        Plaintiff,              )
                        )
     vs.                          )            1:06-cv-01580-LJM-WTL
                        )
EAGLE CARE, LLC, d/b/a AMERICAN   )
VILLAGE RETIREMENT COMMUNITY,     )
        Defendant.             )

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

      This matter comes before the Court on Defendant's, Eaglecare, LLC, d/b/a American Village Retirement Community ("American Village"), Motion for Summary Judgment.  Plaintiff, Vanessa Beard ("Beard"), claims that American Village discriminated against her on the basis of her race, and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, and the Civil Rights Act of 1866, 42 U.S.C. § 1981.  For the following reasons the Court concludes that Defendant's Motion should be **DENIED**.

**I. BACKGROUND**

      Beard, an African American female, began working for American Village in November 2002 as a certified nursing assistant.  Compl. at ¶ 9.  Her designated supervisors at American Village were Judy Russell ("Russell"), the director of nursing and Glenna Ferguson, ("Ferguson"), the assistant director of nursing.  Beard Dep. at 16.

      On December 11, 2005, Beard went to work at American Village, but she did not drive herself due to bad weather.  Beard Dep. at 10-11.  During Beard's shift at approximately 6:30 p.m.,

a resident either bit or attempted to bite her while she was helping the resident undress.  There is some dispute regarding how Jamie Sturgell, the nursing scheduler, discovered that Beard had been bitten.  Beard claims that the resident attempted to bite her, and then she walked out into the hall and said, "she tried to bite me."  Next, according to Beard, she walked to the sink and took off her gloves to wash her hands.  It was while she was washing her hands, according to Beard, that Sturgell asked her to repeat what she had said when she first stepped into the hall.  Beard Dep. at 25-26.  Conversely, Sturgell claims that Beard "came down the hallway with a resident chasing her, ripped off her glove, [and] told [Sturgell] that the resident had bitten [Beard's] finger, and showed [Sturgell] bite marks and redness on [the] finger."  Sturgell Aff. at ¶ 5.

There is further dispute as to whether Beard was actually injured.  Beard maintained that she had not been injured in the incident, but that the resident had merely attempted to bite her.  Beard Dep. 26, 29.  Sturgell asserted that she considered the incident to be a work place injury.  In her "Supervisor's Accident Investigation" form, Sturgell wrote that Beard stated that her hand had been bitten and the skin was not broken, but medical treatment was needed.  Pl.'s Ex. 4.  In the "Employee Incident Report," however, she wrote that there was no "apparent" injury.  Pl.'s Ex. 2.  She also described the incident as one where a "resident became aggressive."  *Id.*  She did not write anywhere on the report that Beard was bitten by the resident.  *Id.*

American Village's published company policy states that employees must take a drug test "after any accident or occurrence that results in an injury on the job as defined by the Occupational Safety and Health Administration ("OSHA")," and that "[e]mployees who refuse to submit to drug and alcohol testing will be terminated."  Def.'s Ex. A.  An American Village internal memorandum dated May 10, 2004,  also stated, "ASC will require, effective immediately, that all employees

2

sustaining a work-related injury be administered a drug test, whether medical attention is or is not needed."   Def.'s Ex. B.   Further, the Employee Handbook, states that insubordination is a permissible reason for termination without warning, and it indicates that employees are required to go to MedCheck following a workplace injury to submit to a drug test.   Def.'s Ex. B to Fulk's Aff; Travelsted Aff. at ¶ 8.

Once Sturgell determined that the alleged bite or attempted biting was a workplace injury and filled out the applicable reports, she told Beard to clock out and to go to MedCheck to have her finger examined and to take a drug test.   Pl.'s Ex. 7.   Beard told Sturgell that she was not injured and she did not want to go to MedCheck.   *Id.*; Beard Dep. at 28.   Beard contends that at that point Sturgell told her that it did not matter whether she was hurt or not.   Beard Dep. at 28.   Sturgell told Beard she was going to have to go to MedCheck regardless because "[Sturgell] was going to have to start sending some of the black girls out, even if they stomp [sic] their toe."   Beard Dep. at 5.

At that point, Sturgell called Russell and both Sturgell and Beard spoke with her.   Beard Dep. at 29.   They discussed Beard's finger, and Russell told Beard that if she did not clock out and leave, that she was going to terminate her, and that it was Beard's decision.   Beard Dep. at 29.   Beard stated that she did not want to go to MedCheck because of the bad weather and the fact that she had no transportation.   Beard Dep. at 30.

Beard did not go to MedCheck that evening, but she did receive a copy of the "Employee Incident Report" as well as a document called "Incident Report Instructions."   Beard Dep. at 57-58.   The "Incident Report Instructions" stated in bold faced type, "[you] must go to MedCheck immediately whether you need medical treatment or not.   A drug screen is mandatory on the date of your incident."   Def.'s Ex. 6.

3

On December 12, 2005, at around 8:00 a.m., Beard went to American Village to talk to Jennifer Fulks, an administrator at American Village, and Ferguson regarding the incident the night before.  Beard Dep. at 13; Pl.'s Answer to Def.'s Interrog. 14.  Neither Ferguson nor Fulks were informed about the incident prior to the meeting with Beard.  Pl.'s Answer to Def.'s Interrog. 14.  Beard told them what had happened the previous night.  *Id.*  She told them that evening she had  no way to get to MedCheck, and she gave them the original accident report.  *Id.*  They both looked at Beard's hand, and Beard told the two supervisors that Sturgell had told Beard that she was sending the "black girls out even if they stub a toe."  *Id.*  Fulks told Beard that she would investigate and that Beard needed to go home, but that she would receive pay.  *Id.*  Fulks also told her that she would not be terminated. *Id.*  Neither Fulks nor Ferguson told Beard that she needed to go to MedCheck, even though she was still within the twenty-four hour period in which she would be able to go pursuant to company policy.  *Id.*

Fulks claimed that she did investigate the biting incident and Beard's ensuing refusal to go to MedCheck, and as a result of the investigation she and Russell determined that Beard's conduct warranted termination of her employment and she submitted her recommendation to Jeff Cooper ("Cooper"), the Executive Director of American Village, who approved Beard's termination.  Fulks Aff. at ¶¶ 4-6; Cooper Aff. at ¶ 4.  Fulks filled out an "Employee Communication" form on December 15, 2005, that stated as a result of Beard's behavior on December 11, 2005, Beard was going to be terminated.  Fulks Aff. at ¶ 6; Def.'s Ex. A.  Fulks also filled out a "Notice of Involuntary Termination of Employment" form that stated that Beard's date of termination was December 16, 2005.  Fulks Aff. at ¶ 6; Def.'s Ex. A.  Both forms stated that Beard's termination came as a result of her insubordination in refusing to go to MedCheck pursuant to company policy.

Def.'s Ex. A.  However, Beard later discovered that her employer-sponsored health care had been cancelled effective on December 12, 2005, three days before Beard learned of her termination.  Pl.'s Answer to Def.'s Interrog. 14.  It is American Village's position that, at the time of Beard's termination, it was American Villages' policy to terminate an employee's benefits effective the day after their last day of work, and it was after Beard's termination that the policy was terminated effective December 12, 2005.  Rowe Aff. at ¶¶ 6-7.

When asked whether anyone at American Village had ever said anything about her race, Beard responded that she had seen things that she believed to be discriminatory.  Beard Dep. at 13-14.  If events that Beard believed to be "black events," like the Circle City Classic or Black Expo, were taking place, the management posted a form that stated that during the times that the events were going on, anyone who called in sick would have to come in and see the nurses directly to confirm that they were actually ill.  Beard Dep. at 14.  Beard said that on the same form "someone had [written] racist remarks."  Further, this was not a procedure that was followed at any other time.  Beard Dep. at 15.  American Village, however, denies and "is wholly offended" by the allegation that this is its practice.  Def.'s Reply at 4.

## II. <u>SUMMARY JUDGMENT STANDARD</u>

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68

(7th Cir. 1990), *cert. denied*, 499 U.S. 923 (1991).  Motions for summary judgment are governed by

Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the affidavits, if any,
> show that there is no genuine issue as to any material fact and that the moving party
> is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).  Summary judgment is the "put up or shut up" moment in a lawsuit.  *Johnson*

*v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003), *reh'g denied*.  Once a party has made

a properly-supported motion for summary judgment, the opposing party may not simply rest upon

the pleadings but must instead submit evidentiary materials that "set forth specific facts showing that

there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  A genuine issue of material fact exists

whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for

that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The nonmoving party bears

the burden of demonstrating that such a genuine issue of material fact exists.  *See Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96

F.3d 992, 997 (7th Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997).  It is not the duty of the Court to

scour the record in search of evidence to defeat a motion for summary judgment; rather, the

nonmoving party bears the responsibility of identifying the evidence upon which he relies.  *See*

*Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party

has met the standard of Rule 56, summary judgment is mandatory.  *Celotex*, 477 U.S. at 322-23;

*Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, a court should draw all reasonable inferences

from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the

light most favorable to the nonmoving party.  *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th

6

Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997).  The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment.  *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996).  Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute.  *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).  "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party."  *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996), *cert. denied*, 519 U.S. 1115 (1997).

On certain occasions, the Seventh Circuit has suggested that a court approach a motion for summary judgment in an employment discrimination case with a particular degree of caution.  *See e.g., Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993); *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989).  The language implied that summary judgment might be less appropriate in this context based upon the presence of issues of motive and intent.  *Holland*, 883 F.2d at 1312.  As the Seventh Circuit has emphasized, however, these cases do not establish a heightened summary judgment standard for employment-related cases.  Instead, the language from the prior cases simply means "that courts should be careful in a discrimination case as in any case not to grant summary judgment if there is an issue of material fact that is genuinely contestable, which an issue of intent often though not always will be."  *Wallace v. SMC Pneumatics*, Inc., 103 F.3d 1394, 1396 (7th Cir. 1997).  Even when discriminatory intent is at issue, summary judgment is appropriate when the nonmovant presents no evidence to indicate motive or intent in support of his position.  *See Holland*, 883 F.2d at 1312.  Further, the nonmovant will not defeat

summary judgment merely by pointing to self-serving allegations without evidentiary support. *See Cliff v. Bd. of Sch. Comm'rs*, 42 F.3d 403, 408 (7th Cir. 1994).


### III. DISCUSSION

Beard presents two separate claims for relief: unlawful discrimination on the basis of her race and unlawful retaliation. The Court addresses each claim in turn.


### A. BEARD'S RACE DISCRIMINATION CLAIM

Beard argues that American Village discriminated against her on the basis of her race when it subjected her to disparate treatment when Sturgell and Russell required her to go to MedCheck although she was allegedly not injured. Beard alleges that American Village further discriminated against her when they wrongfully terminated her employment, which was a contractual relationship. Title VII makes it unlawful to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts, . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

A plaintiff can prove a claim of race discrimination under Title VII or § 1981 under the direct method or the indirect burden-shifting method. *See Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263 (7th Cir. 2004). Beard proceeds under the direct method, and she asserts that there is a genuine issue of material fact as to whether Sturgell required her to go to MedCheck out of racial animus and whether her ensuing termination was also based on the same racial animus. "The direct method of

8

proof permits a plaintiff to show, by way of direct or circumstantial evidence, that [her] employer's decision to take an adverse job action against [her] was motivated by an impermissible purpose . . . ." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). Direct evidence, if believed by the trier of fact, is evidence that would prove, without inference or presumption, discriminatory conduct on the part of the employer. *Id.* Essentially, direct evidence "requires an admission by the decision maker that [her] actions were based upon the prohibited animus." *Rogers v. City of Chicago*, 320 F.3d 784, 753 (7th Cir. 2003). "A plaintiff can also prevail under the direct method of proof by constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Rhodes* 359 F.3d at 504 (quoting *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 737 (7th Cir. 1994)) (internal quotations omitted). "That circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003).

In her statement of genuine issues, Beard asserts that the primary material disputed fact is whether she actually sustained a work place injury when the alleged biting or attempted biting took place. American Village argues that, although there is a question as to whether Beard was actually injured, it is not material. Def.'s Reply at 3. However, per company policy, a drug test was not required unless the employee suffered a work place injury as defined by OSHA. Thus, whether Beard actually suffered an injury is quite material. Beard puts forth direct evidence, that if believed by a fact finder, would prove racial animus on the part of her supervisor who made the decision that she was allegedly injured. Beard states that Sturgell told her that it did not matter if Beard was injured because Sturgell was going to have to start sending the black girls out even if they only stub their toe. If a fact finder believed that Sturgell said this, then it could infer that Sturgell acted with

9

an impermissible purpose when she subjected Beard to disparate treatment by requiring her to get a drug test even though she was not injured.  To support the proposition that Sturgell did not actually believe Beard to be injured, Beard points to the "Employee Incident Report" in which Sturgell wrote that there was no "apparent injury" to Beard's hand.  This evidence combined with Beard's testimony about Sturgell's comment shows that there is a genuine question as to whether American Village subjected Beard to disparate treatment because of racial animus.

On her claim of disparate treatment, Beard primarily points to Sturgell's statement to support the proposition that racial animus provided the basis of the decision that she was required to go to MedCheck.  American Village, however, contends that Russell was the main decision maker who ordered Beard to go to MedCheck.  Because Beard did not attribute any discriminatory conduct to Russell, according to American Village, she could not claim that she had been discriminated against and the issue of what Sturgell said was not material.  Both Sturgell and Beard only spoke to Russell on the phone after Beard told Sturgell that she did not want to go to MedCheck.  Russell did order Beard to comply with Sturgell's demand that she go to MedCheck, but she never examined Beard's alleged injury.  Taking the alleged facts in the light most favorable to Beard, a reasonable jury could conclude that Russell's decision was not based on an independent assessment of the facts; rather, it was based solely on Sturgell's assessment.  Therefore, even though Russell was the conduit of whether Beard should go to MedCheck, Sturgell made the actual decision that Beard needed to go based on racial animus and Russell simply did not question it.  This is enough to establish the employer's liability.  *Cf. Brewer v. Bd. of Trustees of Univ. of Ill.*, 479 F.3d 908, 920 (7th Cir. 2007 (discussing the need for decision makers to make an independent investigation before making an adverse employment decision); *Shager v. Upjohn Co.*, 913 F2d 398, 405 (7th Cir. 1990).

Beard also claims that her termination was motivated by her race.  American Village cites Beard's failure to go to MedCheck as insubordination that legitimately led to her termination. However, if a fact finder believed that Beard was not actually injured, then that fact finder could decide that Beard's termination was not premised on any insubordination because without actual injury Beard was not required to get a drug test.  Beard presents evidence that she spoke with the assistant nursing director, Ferguson, and an American Village administrator, Fulks, the day after she refused to go to MedCheck and told them about Sturgell's alleged statement. They said they would investigate the incident and Beard claims they told her that she would not be fired.  However, Beard's employer sponsored health care coverage was cancelled effective the same day she spoke with them.  American Village asserts, without supporting documentation, that it is company policy for an employee's benefits to be cancelled effective the day after her last date of employment.  Rowe Aff. at ¶ 6.  Even if this is true, according to Ferguson and Fulks, Beard would not be terminated that day for disputing the incident.  Therefore, a reasonable jury could conclude that Beard was actually fired on December 12, 2005 and for a discriminating purpose.  Thus, these facts present additional circumstantial evidence that is part of a "convincing mosaic" of racial animus that led to Beard's termination.

Beard also presents disputed testimony that American Village had a posted policy that stated that during "black events" like Circle City Classic and Black Expo an employee who called in sick had to come in to work and be checked out by a nurse in order to assure American Village that they actually were sick.  Beard alleges that this was not the policy or practice of American Village at any other time during the year.  American Village denies that this was their policy, and argues that because Beard does not allege that Sturgell, Russell or anyone involved in her termination engaged

in this conduct that it has no relevance.  However, this evidence, if believed by a fact finder, would allow that fact finder to infer racial animus on the part of the management of American Village. Thus, if believed by a fact finder, this evidence could help to create the "convincing mosaic" that would allow a fact finder to infer intentional discrimination on the part of the management personnel that made the ultimate decision to terminate Beard.

Beard's testimony that she was not actually injured combined with Sturgell's alleged comment and Sturgell's notations that Beard had suffered no "apparent injury," allow a fact finder to infer that Sturgell and Russell's order that Beard get a drug test at MedCheck was motivated by racial animus, an impermissible purpose.  Further, the evidence that Beard presented regarding when her health benefits were cancelled in combination with the testimony she gave that American Village had a harsher absentee policy at times when "black events" were going on could create a "convincing mosaic" of racial discrimination on the part of the management of American Village which resulted in her termination.  Therefore, the Court concludes that the evidence Beard presented creates a genuine issue of material fact regarding whether she was subjected to adverse employment action for an impermissible purpose.  Accordingly, American Village's Motion for Summary Judgment on Beard's race discrimination claim is **DENIED**.

## B. RETALIATION CLAIM

In her retaliation claim Beard again proceeds under the direct method.  To establish a *prima facie* case for retaliation under the direct method, a plaintiff "must prove that he (1) engaged in a statutorily protected activity; (2) suffered an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action."  *Tomanovich v. City of*

*Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (citing *Moser v. Ind. Dep't of Corr.*, 406 F.3d 896, 903 (7th Cir. 2005)).  Under the direct method of proof, two types of evidence are permissible, direct evidence and circumstantial evidence.  *Id.*  The former requires evidence that a decision maker had discriminatory animus.  The latter requires evidence of "a convincing mosaic of discrimination against the plaintiff."  *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994).  Generally, in retaliation cases this circumstantial evidence is comprised of suspicious timing, ambiguous statements or behavior toward other employees; evidence that similarly situated employees were treated differently; or evidence that the employee did not deserve termination and that the employer's reason for termination was pretext for discrimination.  *See Volovsek v. Wis. Dep't of Agric.*, 344 F.3d 680, 689-90 (7th Cir. 2003).

Beard asserts that the protected activity she engaged in occurred on the day following the alleged biting when she complained to Fulks and Ferguson about Sturgell's alleged statement to her that she was "sending all the black girls out even if they stubbed a toe." Pl.'s Resp. at 11.  Filing a complaint with an employer may constitute statutorily protected activity if the complaint is made during the plaintiff's time of employment and the plaintiff complains of conduct prohibited by Title VII.  *See Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1147 (7th Cir. 1997).  American Village concedes that Beard's complaint is protected conduct. Def.'s Reply, at 6.  Further, American Village concedes that Beard suffered an adverse employment action when Cooper approved Fulk's recommendation that she be terminated.  *Id.*

The primary dispute between the parties concerns whether the required causal link exists between Beard's protected conduct and the adverse employment action.  Beard was terminated three days after she complained to Ferguson and Fulks regarding Sturgell's statement.  Additionally, the

sequence of events preceding Beard's termination allow a reasonable fact finder to infer that the legitimate non-discriminatory reason American Village cited for Beard's termination is pretextual. The statement that Sturgell allegedly made and her notations on American Village's forms that suggest that Beard was not actually injured, combined with the fact that American Village cancelled Beard's health benefits on the same day that she complained to Fulks and Ferguson regarding Sturgell's conduct and statement, present enough circumstantial evidence to create a "convincing mosaic" of discrimination against Beard.  Accordingly, the Court concludes that there are genuine issues of material fact that preclude summary judgment on Beard's retaliation claim, and therefore **DENIES** American Village's motion on this issue.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the defendant's, Eagle Care, LLC, d/b/a American Village Retirement Community, Motion for Summary Judgment is **DENIED.**

IT IS SO ORDERED this 19th day of June, 2008.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Denise K. LaRue
HASKIN LAUTER & LARUE
dlarue@hlllaw.com

Paul Anthony Logan
HASKIN LAUTER & LARUE
plogan@hlllaw.com

Amy Joan Adolay
KRIEG DEVAULT LLP
aadolay@kdlegal.com

Scott Stuart Morrisson
KRIEG DEVAULT LLP
smorrisson@kdlegal.com